EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Marisol Capote Rivera, Carlos Leyva y la Sociedad de Bienes Gananciales compuesta entre ambos; José Orlando Santiago Rodríguez y Ya-O-Ming Rondón Rodríguez; Julio Enrique Muñoz Ponce de León y Karla Mariel Silva Martínez; Carlos Ismael Rivera Lezcano y Raiza Centeno Pagán; Carmen Milagros Delgado García; Enrique Manuel Ferrer Urbina; Heriberto Ocasio Burgos y Elizabeth Texidor de Jesús, Nivea Rebecca Fraticcelli Espada; Sheila Ana Sánchez Castro; Jorge C. Suárez Castro; David John Dávila Pagán<br><br>Recurridos<br><br>v.<br><br>Voilí Voilá Corporation; David Chaymol; OGPE<br><br>Recurridos<br><br>Municipio Autónomo de Guaynabo; Oficina de Permisos Urbanísticos<br><br>Peticionarios | Certiorari<br><br>2024 TSPR 29<br><br>213 DPR ___ |
| Marisol Capote Rivera, Carlos Leyva y la Sociedad de Bienes Gananciales compuesta entre ambos; José Orlando Santiago Rodríguez y Ya-O-Ming Rondón Rodríguez; Julio Enrique Muñoz Ponce de León y Karla Mariel Silva Martínez; Carlos Ismael Rivera Lezcano y Raiza Centeno Pagán; Carmen Milagros Delgado García; Enrique Manuel Ferrer Urbina; Heriberto Ocasio Burgos y Elizabeth Texidor de Jesús, Nivea Rebecca Fraticcelli Espada; Sheila Ana Sánchez Castro; Jorge C. Suárez Castro; David John Dávila Pagán<br><br>Peticionarios<br><br>v.<br><br>Voilí Voilá Corporation; David Chaymol; OGPE<br><br>Recurridos<br><br>Municipio Autónomo de Guaynabo; Oficina de Permisos Urbanísticos<br><br>Recurridos | |

Número del Caso:   CC-2023-0305
                   cons. con CC-2023-0306


Fecha:  26 de marzo de 2023


Tribunal de Apelaciones:

     Panel X


**CC-2023-0305**

Abogados de la parte peticionaria:

     Lcdo. Jaime L. Gordon De Jesús
     Lcda. Heidi Medina Cordero


Abogado de la parte recurrida:

     Lcdo. Miguel Mihaljevich


**CC-2023-0306**

Abogados de la parte peticionaria:

     Lcda. Michelle E. Rodríguez Gerena
     Lcdo. Daniel R. Martínez Avilés
     Lcda. Gabriela N. Cruz Rodríguez

Abogado de la parte recurrida:

     Lcdo. Miguel L. Torres Torres


Materia:  Derecho de Permisos – Exigencia de una consulta de ubicación para obtener un permiso para uso ecoturístico debido a la clasificación del terreno.


Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Marisol Capote Rivera, Carlos Leyva y la Sociedad de Bienes Gananciales compuesta entre ambos; José Orlando Santiago Rodríguez y Ya-O-Ming Rondón Rodríguez; Julio Enrique Muñoz Ponce de León y Karla Mariel Silva Martínez; Carlos Ismael Rivera Lezcano y Raiza Centeno Pagán; Carmen Milagros Delgado García; Enrique Manuel Ferrer Urbina; Heriberto Ocasio Burgos y Elizabeth Texidor de Jesús, Nivea Rebecca Fraticcelli Espada; Sheila Ana Sánchez Castro; Jorge C. Suárez Castro; David John Dávila Pagán<br><br>Recurridos<br><br>v.<br><br>Voilí Voilá Corporation; David Chaymol; OGPE<br><br>Recurridos<br><br>Municipio Autónomo de Guaynabo; Oficina de Permisos Urbanísticos<br><br>Peticionarios | CC-2023-0305 cons. con CC-2023-0306 | Certiorari |
| Marisol Capote Rivera, Carlos Leyva y la Sociedad de Bienes Gananciales compuesta entre ambos; José Orlando Santiago Rodríguez y Ya-O-Ming Rondón Rodríguez; Julio Enrique Muñoz Ponce de León y Karla Mariel Silva Martínez; Carlos Ismael Rivera Lezcano y Raiza Centeno Pagán; Carmen Milagros Delgado García; Enrique Manuel Ferrer Urbina; Heriberto Ocasio Burgos y Elizabeth Texidor de Jesús, Nivea Rebecca Fraticcelli Espada; Sheila Ana Sánchez | | |

Castro; Jorge C. Suárez Castro;
David John Dávila Pagán

Peticionarios

v.

Voilí Voilá Corporation; David
Chaymol; OGPE

Recurridos

Municipio Autónomo de Guaynabo;
Oficina de Permisos Urbanísticos

Recurridos

Opinión del Tribunal emitida por el Juez Asociado señor ESTRELLA MARTÍNEZ.

En San Juan, Puerto Rico, a 26 de marzo de 2024.

En esta ocasión, este Tribunal tiene la obligación de dilucidar aspectos específicos de los usos permitidos en los distritos designados para la conservación de recursos. En particular, nos corresponde identificar si la obtención de un permiso para un uso ecoturístico puede tramitarse de forma ministerial o si, por el contrario, el cuerpo reglamentario dispone que la clasificación del terreno exige un trámite con criterios subjetivos como lo es la consulta de ubicación. Siendo ello así, veamos, entonces, el cuadro fáctico dentro del cual se desarrolló este caso.

I

El 11 de febrero de 2022, Voilí Voilá Corporation (VVC), por conducto del Ingeniero José G. Deya, presentó ante la Oficina de Permisos Urbanísticos (OPU) del Municipio Autónomo

de Guaynabo (Municipio) un Memorial explicativo con el fin de obtener un permiso de uso ministerial. En específico, expresó su interés en el uso de ciertas instalaciones en una finca que ubica en Guaynabo, específicamente en el Sector Capó del barrio Hato Nuevo, para actividades recreativas, ecoturísticas y agrícolas.[1] Afirmó que, bajo la Sección 6.1.23.3 del Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios, Reglamento Núm. 9233 de 2 de diciembre de 2020 (Reglamento Conjunto), tales actividades podían ser permitidas ministerialmente, pues no presentaban conflictos con la conservación del tipo o clase del recurso y la estabilidad de los terrenos.

Acto seguido, un grupo de vecinos del Sector Capó, algunos de estos colindantes con el terreno en cuestión (Vecinos del Sector Capó), presentó una Solicitud de intervención y oposición al permiso único.[2] El grupo

---

[1] Apéndice de Recurso de revisión judicial, págs. 36-38. Según esta petición, VVC originalmente había solicitado una consulta de ubicación para otro uso dentro de estas instalaciones, pero el asunto fue archivado después del transcurso de treinta (30) días sin que se obtuvieran las recomendaciones requeridas. Conforme se desprende del expediente, el 10 de junio de 2021, VVC envió un Memorial explicativo a la OPU con el fin de obtener autorización para construir un restaurante que describió como tipo "Farm to Table" en el primer nivel de una estructura existente en el predio antes descrito, manteniendo el uso residencial del segundo nivel. Íd., págs. 28-35.

[2] El grupo está compuesto por la Sra. Marisol Capote Rivera, el Sr. Carlos Leyva Jordán, la Sociedad Legal de Gananciales compuesta entre estos, el Sr. José O. Santiago Rodríguez, la Sra. Ya-o-Ming Rondón Rodríguez, el Sr. Julio

argumentó que la solicitud de VVC no era de carácter ministerial y que este no era el procedimiento apropiado para esta, pues pretendía usar una propiedad residencial para una actividad comercial que era incompatible con la clasificación del terreno. Los Vecinos del Sector Capó sostuvieron que la actividad propuesta afectaría el entorno residencial, el cual no contaba con la infraestructura o las condiciones por no ser uno turístico o comercial, y, en consecuencia, incidiría sobre sus intereses propietarios.

En su Oposición a solicitud de intervención, VVC arguyó que los Vecinos del Sector Capó carecían de legitimación activa, pues, entre otros, el procedimiento no era adjudicativo y no tendría efecto sobre sus intereses propietarios. Añadió que su petición no implicaba un cambio de calificación en el distrito ni tampoco conllevaba un uso con efecto adverso en el sector, pues este estaba contemplado ministerialmente y, además, había sido elaborado conforme al distrito de calificación de la propiedad.

Posteriormente, los Vecinos del Sector Capó presentaron una Moción en solicitud de archivo. Plantearon que la OPU carecía de jurisdicción debido a que la Sección 6.1.23.3 del Reglamento Conjunto requería que los usos en terrenos

---

E. Muñoz Ponce De León, la Sra. Karla N. Silva Martínez, el Sr. Carlos I. Rivera Lezcano, la Sra. Raiza Centeno Pagán, la Sra. Carmen M. Delgado García, el Sr. Enrique M. Ferrer Urbina, el Sr. Heriberto Ocasio Burgos, la Sra. Elizabeth Texidor De Jesús, la Sra. Nivea Rebecca Fraticcelli Espada, la Sra. Sheila A. Sánchez Castro, el Sr. Jorge C. Suárez Castro y el Sr. David J. Dávila Pagán.

clasificados como Conservación de Recursos (CR) fueran tramitados a través de una consulta de ubicación con el fin de demostrar que la actividad propuesta no representaría un conflicto en el área.

En respuesta, VVC instó una <u>Oposición a solicitud de archivo y para que se adjudique permiso de uso ministerial</u>. Reiteró que los Vecinos del Sector Capó carecían de legitimación activa para intervenir en el proceso y que el uso propuesto se encontraba entre aquellos que podían permitirse sin una consulta de ubicación. Sostuvo que concluir que procedía tal trámite tendría el efecto de crear un área sin uso ministerial, lo que sería inconstitucional.

El 13 de mayo de 2022, la OPU declaró <u>ha lugar</u> la solicitud de intervención tras concluir que los Vecinos del Sector Capó habían demostrado ser vecinos de la actividad propuesta y que su participación ayudaría razonablemente a preparar un expediente más completo.

Así las cosas, el 17 de mayo de 2022, la OPU emitió una <u>Resolución de archivo</u>. En esta consignó que la propiedad en cuestión ubicaba en un distrito con Calificación de Conservación de Recursos Cinco (CR-5) y Clasificación de Suelo Rústico Especialmente Protegido (SREP). Concluyó que la Sección 6.2.23.3 del Reglamento Conjunto establecía que servicios como el propuesto por VVC podían ser autorizados en distritos CR siempre y cuando no presentaran conflictos con la conservación del tipo del recurso o la estabilidad de

los terrenos, y que se tramitaran mediante una consulta de ubicación. Por ende, la OPU determinó que procedía archivar sin perjuicio la solicitud debido a que el trámite correcto era la consulta de ubicación y no el trámite de uso ministerial.

Disconforme, VVC recurrió ante la División de Revisiones Administrativas de la Oficina de Gerencia de Permisos (DRA) mediante una Solicitud de revisión administrativa. Protestó que la OPU tratara como discrecional la concesión del permiso de uso en un distrito calificado como CR cuando, a su juicio, este gozaba de carácter ministerial en actividades como las que propuso. Señaló que el Reglamento Conjunto distinguía este tipo de usos de los que requerían consultas de ubicación y que, en su caso específico, la propuesta no conllevaba obra de construcción alguna. Finalmente, reiteró su postura con respecto a la ausencia de legitimación activa y arguyó que la OPU incidió sobre los términos reglamentarios.

Tras la celebración de una vista virtual, el 6 de septiembre de 2022, la DRA emitió una Resolución de revisión administrativa. En esta, señaló que, según la tabla 6.78 de la Sección 6.1.23.3 en el Reglamento Conjunto, las actividades recreacionales, ecoturísticas y agroturísticas estaban listadas como aquellas permitidas ministerialmente. A esto añadió que las actividades propuestas no confligirían con la conservación del recurso y la estabilización del terreno porque se llevarían a cabo sobre obras existentes.

Por consiguiente, concluyó que la determinación de la OPU no merecía deferencia y procedía la solicitud de permiso único.

En desacuerdo, los Vecinos del Sector Capó presentaron un <u>Recurso de revisión judicial</u> ante el Tribunal de Apelaciones. En este, sostuvieron que se concedió incorrectamente de forma ministerial un permiso de uso que tenía que pasar por un proceso de consulta de ubicación debido al distrito en el que ubicaría el negocio propuesto. Argumentaron que, si bien la reglamentación permite usos como el solicitado en distritos CR, tiene que primero confirmarse que este no presentará conflicto con la conservación de los recursos. Señalaron que no se desprendía de la reglamentación que los usos permitidos en un distrito de esta clasificación pudieran ser considerados y otorgados ministerialmente, en particular cuando se trataba de una lista <u>numerus apertus</u> sobre posibles usos.

Por su parte, VVC instó una <u>Solicitud de desestimación</u> en la cual argumentó, esencialmente, que los Vecinos del Sector Capó, colectiva e individualmente, carecían de legitimación activa y capacidad jurídica, pues no podían evidenciar el daño que le causó la determinación recurrida. También alegó que no existía una controversia real y que el expediente estaba incompleto.

De otro lado, la Oficina de Gerencia y Permisos (OGPe) presentó una <u>Oposición a revisión administrativa</u> en la cual sostuvo que la Sección 6.1.23.3 del Reglamento Conjunto

permite ciertos usos que no impactan la estabilidad del recurso o la estabilización del terreno, aspectos que no requerían una evaluación discrecional en esta etapa. Afirmó, además, que la actividad propuesta tomaría lugar en una estructura existente, por lo que no requería el desarrollo de terrenos o construcción para llevarse a cabo. Arguyó que interpretar que los usos en la tabla exigen una consulta de ubicación equivaldría a anularla.

El 15 de marzo de 2023, notificada al día siguiente, el Tribunal de Apelaciones emitió una <u>Sentencia</u> en la cual confirmó el dictamen de la DRA. En síntesis, el foro apelativo intermedio concluyó que la determinación de la DRA fue razonable, pues según surge de la Tabla 6.78 del Reglamento Conjunto, las instalaciones recreativas, ecoturísticas y para uso agrícola se encontraban entre los usos permitidos en un distrito C-R y, por ende, podían ser autorizados ministerialmente. Tanto el Municipio como los Vecinos del Sector Capó presentaron sus respectivas solicitudes de reconsideración, las cuales fueron eventualmente denegadas por el foro apelativo intermedio.

Inconforme, el Municipio acudió ante este Tribunal mediante un <u>Recurso de revisión judicial</u>. En primer lugar, argumentó en favor de conceder deferencia a los municipios autónomos en el despliegue de sus facultades administrativas sobre las cuales tienen pericia, particularmente en lo referente al desarrollo de sus terrenos y la protección de

sus recursos naturales. Sostuvo que el DRA y el Tribunal de Apelaciones erraron al revocar su determinación y, en consecuencia, otorgar un permiso sin cerciorarse que ello no afectaría la estabilidad de los terrenos o pusiera en peligro la conservación de los recursos protegidos. Reafirmó que la Sección 6.1.23.3 del Reglamento Conjunto exigía una consulta de ubicación para la actividad de uso propuesta.

Por su parte, los Vecinos del Sector Capó también comparecieron ante nos a través de un Auto de certiorari. En este, reiteraron su postura con respecto a que, ante la realidad del proyecto propuesto y la letra clara de la reglamentación sobre distritos CR, la evaluación del uso solicitado tenía que estar acompañada de un análisis sobre la conservación de los recursos y la estabilidad del terreno, es decir, de una consulta de ubicación. Señalaron que la petición de VVC no identificó los recursos a proteger ni el tipo de recurso en el predio, como tampoco certificó que no se afectarían los suelos según exige la reglamentación aplicable. Rechazaron que la consulta de ubicación fuese requerida solo para los usos no enumerados en la tabla y razonaron que el uso propuesto por VVC solo podía ser aprobado de forma discrecional porque tenían que cerciorarse de que este cumpliera con todas las consideraciones reglamentarias.

En su Alegato de la agencia recurrida, la OGPE afirmó que lo solicitado por VVC constituía un uso permitido por la

calificación del predio conforme al Reglamento Conjunto, en particular por tratarse de una operación que se llevaría a cabo en una estructura existente en un terreno desarrollado. Sostuvo que interpretar que los usos desglosados en la tabla también requerían una consulta de ubicación equivaldría a anular la distinción entre estos y los que no fueron incluidos. Descartó, además, que la determinación de la OPU mereciera más deferencia que la suya, pues es esta la agencia revisora con pericia.

Finalmente, mediante un Alegato de la parte recurrida, VVC reiteró que su petición se centró en un permiso de uso para actividades recreativas, ecoturísticas y agroturísticas en las estructuras existentes en la propiedad, el cual se concede ministerialmente en el distrito C-R y descansa en el derecho propietario de una persona al uso y disfrute de su propiedad. Sostuvo que la Tabla 6.78 del Reglamento Conjunto distinguía con claridad los usos ministeriales de aquellos que requerían una consulta de ubicación. Expresó que el lenguaje en la sección antes aludida no implicaba la existencia de criterios subjetivos e indicó que demostró que su proyecto y los usos propuestos no conllevarían impacto ambiental que requieran un análisis más profundo.

Trabada así la controversia, tras la consolidación de los recursos, la expedición del auto solicitado y la comparecencia de todas las partes, procedemos a resolver el

asunto, no sin antes repasar el Derecho aplicable a la controversia.

## II

### A.

Como se sabe, la revisión judicial permite a los tribunales garantizar que las agencias administrativas actúen dentro de los márgenes de las facultades que le fueron delegadas por ley. Comisión Ciudadanos v. G.P. Real Prop., 173 DPR 998, 1015 (2008). A su vez, posibilita el poder constatar que los organismos administrativos "cumplan con los mandatos constitucionales que rigen el ejercicio de su función, especialmente con los requisitos del debido proceso de ley". Íd. De esta forma, se vela por que los ciudadanos tengan "un foro al cual recurrir para vindicar sus derechos y obtener un remedio frente a las actuaciones arbitrarias de las agencias". Íd. En términos simples, la revisión judicial constituye "el recurso exclusivo para revisar los méritos de una decisión administrativa sea ésta de naturaleza adjudicativa o de naturaleza informal". Depto. Educ. v. Sindicato Puertorriqueño, 168 DPR 527, 543 (2006).

No obstante, al ejercer la revisión judicial los tribunales no pueden descartar de forma absoluta la determinación de una agencia, sino que primero tienen que examinar la totalidad del expediente y determinar si la interpretación de la agencia representó un ejercicio razonable de su discreción administrativa, así fundamentado

en la pericia particular de esta, en consideraciones de política pública o en la apreciación de la prueba. Otero v. Toyota, 163 DPR 716, 729 (2005). Esto es así, toda vez que las determinaciones de los organismos administrativos están revestidas de una presunción de regularidad y corrección debido a su vasta experiencia y conocimiento especializado, lo que significa que estas merecen deferencia por parte de los foros judiciales. González Segarra v. CFSE, 188 DPR 252, 276 (2013). Dicho de otro modo, solo procede sustituir el criterio de la agencia por el del tribunal revisor cuando no exista una base racional para explicar la decisión administrativa. Capó Cruz v. Jta. de Planificación et al, 204 DPR 581, 591 (2020).

Ahora bien, aunque los tribunales revisores están llamados a conceder deferencia amplia a las determinaciones de las agencias administrativas, tal norma no es absoluta. En otras palabras, no puede imprimírsele un sello de corrección automático bajo el pretexto de deferencia a aquellas determinaciones o interpretaciones administrativas que son irrazonables, ilegales o contrarias a Derecho. Graciani Rodríguez v. Garage Isla Verde, 202 DPR 117, 126 (2019). En consecuencia, la deferencia cede cuando: (1) la decisión no está basada en evidencia sustancial; (2) el organismo administrativo ha errado en la aplicación o interpretación de las leyes o reglamentos;(3) ha mediado una actuación arbitraria, irrazonable o ilegal, o (4) la

actuación administrativa lesiona derechos constitucionales fundamentales. Super Asphalt Pavement, Corp. v. AFI y otro, 206 DPR 803, 819 (2021).

**B.**

En nuestro ordenamiento, "el marco jurídico y administrativo que rige la solicitud, evaluación, concesión y denegación de permisos" fue establecido mediante la Ley Núm. 161-2009, conocida como la Ley para la Reforma del Proceso de Permisos de Puerto Rico, 23 LPRA sec. 9011 et seq. Véase, además, Laureano v. Mun. de Bayamón, 197 DPR 420, 433 (2017). Debido a la pertinencia en esta controversia de los conceptos que se definen a continuación, es necesario visitar el Art. 1.5 de la ley antes citada, la cual, en lo que nos concierne, dispone lo siguiente:

> 14) "Consulta de ubicación" - Es el procedimiento ante la Oficina de Gerencia de Permisos o los Municipios Autónomos con Jerarquía de la I a la V, a los cuales se le haya delegado dicha facultad por medio del Convenio de Transferencia, para que evalúen, pasen juicio y tomen la determinación que estimen pertinente sobre propuestos usos de terrenos que no son permitidos ministerialmente y que no pueden considerarse mediante otro mecanismo. En áreas no calificadas incluye propuestos usos de terrenos que por su naturaleza y complejidad requieran un grado mayor de análisis.
>
> […]
>
> 48) "Ministerial" - describe una determinación que no conlleva juicio subjetivo por parte de un funcionario público o Profesional Autorizado sobre la forma en que se conduce o propone una actividad o acción. El funcionario o Profesional Autorizado meramente aplica los requisitos específicos de las leyes o reglamentos a los hechos presentados, pero no utiliza ninguna

discreción especial o juicio para llegar a su determinación, ya que esta determinación involucra únicamente el uso de estándares fijos o medidas objetivas. El funcionario no puede utilizar juicios subjetivos, discrecionales o personales al decidir si una actividad debe ser realizada o cómo debe ser realizada. Por ejemplo, un permiso de construcción sería de carácter ministerial si el funcionario sólo tuviera que determinar si el uso es permitido en la propiedad bajo los distritos de calificación aplicables, si cumple con los requisitos de edificabilidad aplicables (e.g., Código de Construcción) y si el solicitante ha pagado cualquier cargo aplicable y presentado los documentos requeridos; el Reglamento Conjunto de Permisos contendrá una lista en la que se incluyan todos los permisos que se consideran ministeriales. 23 LPRA sec. 9011.

Precisamente, tal lista en el inciso (d) de la Sección 2.2.1.3 del Reglamento Conjunto[3] establece que los permisos

---

[3]En <u>Martínez Fernández v. Oficina de Gerencia de Permisos</u>, 2023 TSPR 75, este Tribunal pautó que tanto el Reglamento Conjunto del 2019 como el Reglamento Conjunto de 2020 aquí en disputa eran nulos y, en consecuencia, inválidos. Ahora bien, establecimos que tal determinación de nulidad tendría efecto prospectivo y no aplicaría a aquellos permisos autorizados y expedidos que no fuesen finales y firmes por estar <u>sub judice</u>:

De este modo, todo permiso que haya sido autorizado y expedido al amparo de los referidos reglamentos, previo a la emisión de este pronunciamiento, deberá ser aceptado como legal por toda la ciudadanía. Así, decretamos meridianamente que ningún permiso autorizado y expedido al amparo del Reglamento Conjunto de 2019 y el Reglamento Conjunto de 2020 es inválido por razón de que estas regulaciones hayan sido declaradas nulas.

Las solicitudes de permisos pendientes de adjudicación y en las cuales se hayan celebrado o señalado vista adjudicativa se podrán continuar tramitando al amparo del reglamento conjunto aplicable. **Esto aplica igualmente a aquellos permisos cuya autorización y expedición no es final y firme por ser objeto de revisión en los**

ministeriales se otorgarán para los usos específicamente permitidos en cada distrito y siempre tienen que cumplir cabalmente con varios parámetros, a saber: la calificación; los usos; la altura; el tamaño del solar; la densidad; el área de ocupación; el área bruta de piso; los patios (delantero, laterales y posterior); los espacios de estacionamientos, y el área de carga y descarga. Conforme a la sección antes citada, los permisos de esta naturaleza se expedirán "únicamente cuando la estructura o uso para lo que se solicite el permiso estén en completa armonía y conformidad con las disposiciones de este Reglamento".

De otro lado, el Capítulo 3.7 del Reglamento Conjunto describe lo relacionado con los permisos únicos, los cuales, según los incisos a y b de la Sección 3.7.1.1, consolidan e incorporan varios trámites en una solicitud y deben obtenerse para todo edificio nuevo o existente con usos no

---

**tribunales. Los tribunales evaluarán los recursos que se presenten a tales efectos a la luz del reglamento que la agencia haya utilizado para autorizar y expedir el permiso impugnado, si como cuestión de derecho es el aplicable.** (Negrillas suplidas).

Ante este cuadro, el permiso aquí en controversia fue expedido mientras el Reglamento Conjunto aún tenía vigencia y, de acuerdo con nuestros pronunciamientos, debe atenderse bajo los parámetros de tal reglamentación. Además, existen similitudes entre la Sección 6.1.23.3 del Reglamento Conjunto aquí en cuestión y aquella comparativa en el Borrador para discusión y vista pública del Reglamento Conjunto para la expedición de permisos relacionados al desarrollo, uso de terrenos y operación de negocios de 2022, Sección 6.1.29.3, por lo que lo aquí pautado será de utilidad para su interpretación.

residenciales. Así las cosas, de acuerdo con la Sección 3.7.1.9., un permiso de esta índole puede ser expedido de forma automática por la OGPe o un Municipio Autónomo de Jerarquía de la I a la III cuando un Ingeniero o Arquitecto Licenciado certifique que:

1. que el uso solicitado es permitido en la calificación que ostenta el predio;
2. que cumple con los parámetros del distrito de calificación;
3. que cumple con los requerimientos de prevención de incendios y licencia sanitaria;
4. que cumpla con la exclusión categórica o cumplimiento ambiental aprobado:
5. que presente una recomendación de la Entidad Gubernamental Concernida en la cual se disponga que el permiso de uso para la actividad propuesta cumple con los requisitos aplicables y contenidos en la reglamentación o ley que aplican la operación o actividad propuesta.

Establecido lo anterior, es entonces necesario repasar lo relacionado con los distritos clasificados como CR: Conservación de Recursos, los cuales están cubiertos por la Regla 6.1.23 del Reglamento Conjunto. Según la Sección 6.1.23.1 del cuerpo reglamentario antes citado, esta clasificación de distrito tiene el propósito de "identificar porciones de fincas cuyas características existentes deben mantenerse y mejorarse". De acuerdo con la Sección 6.1.23.2, los usos propuestos en áreas de esta naturaleza tienen las consideraciones especiales siguientes:

a. No se afecte la integridad ecológica de las Áreas de Planificación Especial, Reservas Naturales o Agrícolas o del Plan Sectorial o se ocasione peligro a los recursos naturales, históricos y culturales existentes.

b. Se protejan las cuencas hidrográficas, áreas costeras, de paisajes, dunas, áreas de humedales, los canales de riego y desagües existentes, para garantizar su utilidad como abasto de agua.

c. No se afecte la productividad del suelo que pueda existir en las inmediaciones.

d. Se deberá mantener, conservar, restaurar o proteger el valor natural y ecológico de los suelos, permitiendo actividades agrarias cónsonas con el medio ambiente.

e. Se proteja la salud, seguridad y bienestar de los ocupantes de la propiedad, así como de propiedades limítrofes objeto de la solicitud y que no se aumente el peligro de fuego.

f. No se menoscabe el suministro de luz y la calidad del aire en la estructura a usarse u ocuparse o las propiedades circundantes.

g. No ocasione reducción o perjuicio a los valores de las propiedades establecidas en áreas vecinas.

h. No se aumente el ruido o los niveles de sonido permitidos por la reglamentación.

i. Se demuestre la viabilidad, adecuacidad y conveniencia del uso solicitado.

j. Si ubican en áreas identificadas como de alta y de muy alta susceptibilidad a deslizamientos según el Mapa de Susceptibilidad a Deslizamientos de Puerto Rico (Monroe, 1979) o el instrumento sobre deslizamientos que esté vigente; áreas con historial de deslizamientos o que se encuentran identificadas como depósitos de deslizamientos (Ql) según los cuadrángulos geológicos del USGS.

k. Para los siguientes usos se deberá presentar un estudio geotécnico certificado por un ingeniero profesional que demuestre que la obra propuesta no estará expuesta a un deslizamiento o no causará inestabilidad en el terreno aledaño o se presenten las medidas de mitigación necesarias, utilizando las mejores prácticas de la ingeniería:
1. Vivienda;
2. Infraestructura o instalaciones críticas;
3. Actividades de movimiento de tierra (cambios en la topografía) que pongan en riesgo la estabilidad del terreno; y
4. Toda nueva construcción.

Finalmente, en lo que constituye el punto neurálgico de esta disputa, la Sección 6.1.23.3 del Reglamento Conjunto está dedicada a los usos permitidos dentro de distrito C-R y, en lo que nos concierne, dispone lo siguiente:

El Distrito C-R permite usos tales como los siguientes, siempre que no presenten conflictos con la conservación del tipo o clase del recurso, la estabilidad de los terrenos **y** mediante el proceso de consulta de ubicación ante la Junta Adjudicativa de la OGPe o Municipio Autónomo con Jerarquía de la I a la III. (Énfasis suplido).

Tabla 6.78 – Usos permitidos en Distrito C-R

| CATEGORÍA | USO |
|---|---|
| Conservación de Recursos | Los siguientes usos siempre que no conflijan con la conservación del recurso o la estabilización de los terrenos: <br> a. Instalaciones recreativas y ecoturísticas <br> b. Instalaciones públicas <br> c. Agrícola, utilizando las mejores prácticas de manejo. <br> d. Usos agrícolas utilizando las mejores prácticas de manejo, principalmente, actividades relacionadas con la agro-forestería y la silvicultura, también los cultivos hortícolas y algunas empresas pecuarias compatibles, tales como la apicultura y la acuacultura. <br> e. Silvicultura <br> f. Edificios o estructuras determinadas en |

| | función de la naturaleza de la actividad a realizarse, se ubicarán en los lugares donde conlleve el menor efecto adverso.<br>g. Instalaciones para servicios de infraestructura que sean necesarias para los usos permitidos.<br>h. Construcción de estructuras accesorias a los usos permitidos.<br>i. **Otros usos mediante consulta de ubicación ante la Junta Adjudicativa de la OGPe.** (Énfasis suplido). |
|---|---|

Expuesto el Derecho pertinente, procedemos a discutir su aplicación a esta controversia.

## III

En su Alegato de la parte recurrente, el Municipio reafirma que el ordenamiento jurídico le confiere cierta autonomía con el fin de atender las necesidades particulares de su ciudadanía y sus recursos, por lo que merece deferencia por encima de la DRA, en especial porque a esta no le fue delegada facultad alguna para interpretar el Reglamento Conjunto. Arguye que la Sección 6.1.23.2 del cuerpo reglamentario antes citado establece claramente que los usos propuestos en áreas de conservación exigen estudios que son incompatibles con el trámite ministerial.

De forma similar, en su <u>Alegato de la parte peticionaria</u>, los Vecinos del Sector Capó argumentan que el proyecto propuesto por VVC no puede autorizarse de forma ministerial, pues el uso deseado exige la evaluación de varios criterios por tratarse de un área de conservación de recursos y por no haber otra forma de garantizar que la actividad no presente conflicto con ello. Alegan que la estructura donde se llevará a cabo la actividad comercial es de naturaleza residencial, como el resto de la comunidad, y que el proyecto propuesto afectará el entorno y el terreno.

De su parte, tanto VVC como la OGPe reiteran en sus respectivas comparecencias que el uso propuesto está permitido en un predio de esta calificación, en particular por tratarse de una operación ecoturística que se llevará a cabo en una estructura existente en un terreno desarrollado. Afirman que este procedimiento es enteramente ministerial con criterios objetivos que no requiere trámite ulterior para la concesión del permiso.

Según se relató, VVC presentó una solicitud de permiso único para operar un negocio de actividades recreativas, ecoturísticas y agrícolas en una finca ubicada en un distrito clasificado como CR, es decir, de conservación de recursos. Tras la intervención de los Vecinos del Sector Capó en el asunto, la controversia se centró en la corrección de una solicitud de esta naturaleza a través de un procedimiento ministerial versus una consulta de ubicación.

Al respecto, la OPU, cuya decisión es defendida por el Municipio ante este Tribunal, concluyó que, en efecto, procedía que se tramitara la solicitud a través de una consulta de ubicación, pues actividades como las propuestas por VVC podían ser autorizadas en distritos CR solo cuando no presentaran conflictos con la conservación del tipo del recurso o la estabilidad de los terrenos. Sin embargo, la DRA, cuya postura está siendo defendida por la OGPe ante nos, revocó tal raciocinio tras concluir que el Reglamento Conjunto enumeraba los usos permitidos ministerialmente en distritos CR, entre estos las actividades recreacionales, ecoturísticas y agroturísticas, las cuales no confligirían con la conservación del recurso y la estabilización del terreno.

Como puede notarse, ambas agencias interpretaron la Sección 6.1.23.3 del Reglamento Conjunto de formas diametralmente opuestas: mientras que la OPU determinó que el lenguaje de tal sección dispone que la concesión de un permiso para tales actividades requiere que se demuestre que estas no presentarán un conflicto con la conservación del tipo o clase del recurso o con la estabilidad de los terrenos mediante una consulta de ubicación, la DRA arribó a la conclusión de que ese mismo lenguaje indicaba los usos que requerían consulta de ubicación y los que no, estando los propuestos por VVC en esta última categoría.

En esta coyuntura es necesario revisitar la letra de la Sección 6.1.23.3 del Reglamento Conjunto, la cual tiene como preámbulo lo siguiente:

> El Distrito C-R permite usos tales como los siguientes, siempre que no presenten conflictos con la conservación del tipo o clase del recurso, la estabilidad de los terrenos **y** mediante el proceso de consulta de ubicación ante la Junta Adjudicativa de la OGPe o Municipio Autónomo con Jerarquía de la I a la III.

Nótese, en primer lugar, que este párrafo introductorio no contiene la palabra "ministerial", sino que meramente indica que los usos que serán identificados a continuación pueden llevarse a cabo en distritos CR. Por cierto, es evidente que tales usos no representan un listado taxativo debido a las palabras "tales como los siguientes" en el párrafo introductorio y, en el inciso (i) de la Tabla 6.78, "[o]tros usos mediante consulta de ubicación ante la Junta Adjudicativa de la OGPe". No cabe duda, pues, que se trata de una lista con ejemplos de lo que podría, potencialmente, ser autorizado en un terreno con esta clasificación. De hecho, cabe señalar, además, que una lectura de la totalidad de la Regla 6.1.23 del Reglamento Conjunto, la cual está dedicada al distrito C-R, falla en revelar tan siquiera una instancia en la que se indique que los usos desglosados en la Tabla 6.78 conllevan la concesión de un permiso de forma ministerial. Esto contrasta con otras secciones en las que

específicamente se indica que pueden concederse permisos de forma ministerial.[4]

En segundo lugar, la concesión del permiso para tales usos está sujeto a que no se vea afectada la conservación del recurso o el terreno. Esto va de la mano con los numerosos factores que deben tomarse en consideración al momento de evaluar los usos propuestos en un distrito C-R, los cuales están consignados en la Sección 6.1.23.2 del Reglamento Conjunto que fue transcrita previamente. A juicio de este Tribunal, esta serie de factores, por su cantidad y complejidad, no pueden tomarse en consideración conforme lo exige el Reglamento Conjunto mediante un procedimiento objetivo y autómata como lo es la expedición de permisos ministerialmente.

Es precisamente por ello que la parte final del preámbulo a la Tabla 6.78 lee como sigue: "**y mediante el proceso de consulta de ubicación ante la Junta Adjudicativa de la OGPe o Municipio Autónomo con Jerarquía de la I a la III**". Entiéndase, surge con claridad de este lenguaje que no se trata de una alternativa o la otra, o, conforme sugieren la OGPe y VVC, que cada uno de los requisitos corresponde a partes diferentes de la lista. Es más bien un copulativo que

---

[4]A modo de ejemplo, así lo disponen claramente la Sección 6.1.16.1 sobre distritos I-P y la Regla 6.2.1 sobre áreas no calificadas del Reglamento Conjunto.

exige la presencia de ambos requisitos.[5] Es decir, debe concluirse que la intención manifiesta fue exigir el cumplimiento de ambos requisitos previo a permitir uso alguno en un distrito de calificación CR: demostrar que no se vea afectada la conservación del recurso o el terreno **y** llevar a cabo una consulta de ubicación.

Lo que es más, el 12 de abril de 2023, la Junta de Planificación emitió un documento en respuesta a la petición

---

[5]Para ilustrar la distinción entre un copulativo y un disyuntivo, recurrimos al Prof. Jorge Farinacci Fernós, quien en su obra <u>Hermenéutica Puertorriqueña: Cánones de Interpretación Judicial</u> explica que:

> Por vía de un copulativo, se conectan dos o más expresiones. En términos normativos, esto significa que hace falta que todas las instancias conectadas estén presentes para que la norma aplique. Mediante un disyuntivo, se separan dos expresiones o más. En términos normativos, esto significa que será suficiente que ocurra una de las instancias mencionadas para que la norma aplique.

> Por lo tanto, si la norma lee: "Está prohibido guiar y beber", debe de partirse de la premisa que lo que está prohibido es guiar y beber, es decir, hacer ambas actividades a la vez. Si queremos prohibir ambas conductas separadamente, lo correcto sería decir "Está prohibido guiar o beber", "Están prohibidos guiar y beber" o "No se puede guiar ni beber". En el primer ejemplo, el disyuntivo "o" establece claramente que cualquiera de las dos conductas está prohibida. En el segundo ejemplo, el uso del plural da a entender que la prohibición alcanza todas las instancias mencionadas en la norma. En el tercer ejemplo, el uso del negativo "ni" señala que la prohibición es para ambas conductas separadamente. J. Farinacci Fernós, <u>Hermenéutica Puertorriqueña: Cánones de Interpretación Jurídica</u>, Puerto Rico, Editorial Interjuris, Editorial de la Universidad Interamericana de Puerto Rico, págs. 117-118.

de consulta que efectuaron los Vecinos del Sector Capó el 31 de enero de 2023 con respecto a la sección del Reglamento Conjunto en disputa. En lo pertinente, esta explica lo siguiente:

1. El párrafo introductorio dispone que "el distrito CR permite usos tales como los siguientes, …"; lo que es indicativo de que el listado de la Tabla 6.78 es uno numerus apertus.

2. Dicho párrafo introductorio dispone como condición, que los usos desglosados en la Tabla 6.78 se permitirán, "siempre que no presenten conflictos con la conservación del tipo o clases de recursos," y "la estabilidad de los terrenos…" Esta salvedad se repite en la Sección de Usos de la Categoría CR. En la Categoría Conservación de Recursos de Cuenca (CRC), se incluyen condiciones adicionales. Por lo anterior, resulta evidente que todo uso propuesto requiere un análisis de las circunstancias ambientales y físicas para determinar si una propuesta es o no viable.

3. **Tanto en el párrafo introductorio como en las secciones de los usos permitidos para cada categoría del CR, se dispone que los usos permitidos se evaluaran mediante el proceso de Consulta de Ubicación, por lo que se excluyen los usos ministeriales.**[6] (Énfasis suplido).

El valor de tal interpretación en esta controversia no puede ser subestimado. Después de todo, en Fideicomiso de Conservación de Puerto Rico y Para la Naturaleza, Inc. v. ELA, 211 DPR 521 (2023), indicamos la importancia de la Junta de Planificación en la creación, desarrollo y aprobación del Reglamento Conjunto.[7] Por ende, la postura de la Junta de

---

[6]Apéndice de Recurso de revisión judicial, págs. 94-95.

[7]Al respecto, pronunciamos que "queda claro que la Asamblea Legislativa le delegó específicamente a la Junta de Planificación de Puerto Rico la facultad de adoptar el Reglamento Conjunto de 2020", lo cual no podía interpretarse

Planificación en lo que concierne al Reglamento Conjunto debe ser tomada en consideración por este Tribunal. Además, resáltese que la interpretación de la Junta de Planificación es cónsona con la conclusión a la que hoy arribó este Tribunal al analizar con detenimiento el lenguaje claro e inequívoco de la Sección 6.1.23.3 del Reglamento Conjunto.

En conclusión, el texto de la sección reglamentaria en cuestión no deja espacio para dudas sobre la procedencia de una consulta de ubicación previo a la obtención de un permiso para llevar a cabo alguno de los usos enumerados en la Sección 6.1.23.3 del Reglamento Conjunto por tratarse específicamente de un terreno en distrito C-R. Toda vez que, en este caso, VVC solicitó y la DRA concedió el permiso de uso por la vía ministerial en contraste con las instrucciones patentes del Reglamento Conjunto, corresponde a este Tribunal invalidar el permiso otorgado con el fin de que se canalice su petición a través del trámite que exige el cuerpo reglamentario imperante.

---

"de otra manera, pues más patente no puede ser la delegación allí dispuesta." A esto se sumó "que el estatuto: (a) faculta a la Junta de Planificación a establecer el mecanismo que regirá el proceso de la preparación del Reglamento Conjunto; (b) dispone que las enmiendas parciales al reglamento propuestas por la OGPe o las otras entidades gubernamentales serán finalmente aprobadas por la Junta de Planificación, y (c) le confiere la autoridad a la Junta de Planificación de oponerse a disposiciones que se propongan incluirse en el reglamento si no está de acuerdo. 23 LPRA sec. 9025. Todos estos elementos indican que, además de gozar de la facultad de adoptar el Reglamento Conjunto, la Junta de Planificación también ejerce amplio control sobre el proceso de su preparación". _Fideicomiso de Conservación de Puerto Rico y Para la Naturaleza, Inc. v. ELA_, _supra_.

**IV**

Por los fundamentos antes expresados, se revocan las determinaciones de la División de Revisiones Administrativas de la Oficina de Gerencia de Permisos y el Tribunal de Apelaciones. Por consiguiente, se restablece la orden de archivo de la Oficina de Permisos Urbanísticos del Municipio Autónomo de Guaynabo por ser improcedente la solicitud de permiso por la vía ministerial.

Se dictará Sentencia de conformidad.

Luis F. Estrella Martínez
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Marisol Capote Rivera, Carlos Leyva y la Sociedad de Bienes Gananciales compuesta entre ambos; José Orlando Santiago Rodríguez y Ya-O-Ming Rondón Rodríguez; Julio Enrique Muñoz Ponce de León y Karla Mariel Silva Martínez; Carlos Ismael Rivera Lezcano y Raiza Centeno Pagán; Carmen Milagros Delgado García; Enrique Manuel Ferrer Urbina; Heriberto Ocasio Burgos y Elizabeth Texidor de Jesús, Nivea Rebecca Fraticcelli Espada; Sheila Ana Sánchez Castro; Jorge C. Suárez Castro; David John Dávila Pagán

Recurridos

v.

Voilí Voilá Corporation; David Chaymol; OGPE

Recurridos

Municipio Autónomo de Guaynabo; Oficina de Permisos Urbanísticos

Peticionarios

CC-2023-0305 cons. con CC-2023-0306

Certiorari

Marisol Capote Rivera, Carlos Leyva y la Sociedad de Bienes Gananciales compuesta entre ambos; José Orlando Santiago Rodríguez y Ya-O-Ming Rondón Rodríguez; Julio Enrique Muñoz Ponce de León y Karla Mariel Silva Martínez; Carlos Ismael Rivera Lezcano y Raiza Centeno Pagán; Carmen Milagros Delgado García; Enrique Manuel Ferrer Urbina; Heriberto Ocasio Burgos y Elizabeth Texidor de Jesús, Nivea Rebecca Fraticcelli Espada; Sheila Ana Sánchez

Castro; Jorge C. Suárez Castro;
David John Dávila Pagán

Peticionarios

v.

Voilí Voilá Corporation; David
Chaymol; OGPE

Recurridos

Municipio Autónomo de Guaynabo;
Oficina de Permisos Urbanísticos

Recurridos

Sentencia

En San Juan, Puerto Rico, a 26 de marzo de 2024.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente Sentencia, se revocan las determinaciones de la División de Revisiones Administrativas de la Oficina de Gerencia de Permisos y el Tribunal de Apelaciones. Por consiguiente, se restablece la orden de archivo de la Oficina de Permisos Urbanísticos del Municipio Autónomo de Guaynabo por ser improcedente la solicitud de permiso por la vía ministerial.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo