Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V

| YOMAIRA RIVERA RÍOS<br><br>Recurrida<br><br>v.<br><br>IMANOL AUTO, INC.<br><br>Recurrente | KLRA202500046 | Revisión Judicial Procedente del Departamento de Asuntos del Consumidor<br><br>Caso Núm.: SAN-2024-0017926<br><br>Sobre: Compra venta de vehículos de motor |
| --- | --- | --- |

Panel integrado por su presidente el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

Mateu Meléndez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 7 de marzo de 2025.

El 17 de enero de 2025, IMANOL Auto Inc., (en adelante, la parte recurrente) compareció ante este Tribunal de Apelaciones mediante *Recurso de Revisión Administrativa*. En este, nos solicita la revocación de la *Resolución* emitida el 16 de diciembre de 2024, por el Departamento de Asuntos del Consumidor (en adelante, DACO). Por virtud del aludido dictamen, el DACO declaró Con Lugar la *Querella* que Yomaira Rivera Ríos (en adelante, la recurrida) sometió en su contra y, entre otras cosas, decretó la resolución del contrato de compraventa suscrito entre las partes. También le ordenó a la parte recurrente a devolverle a la recurrida la cantidad de $12,000.00 dada como pronto pago.

Estudiado el legajo apelativo, y conforme al derecho que más adelante exponemos, **confirmamos** la determinación recurrida.

**-I-**

El 10 de enero de 2024, la recurrida sometió una *Querella*. Allí, sostuvo que el 11 de septiembre de 2020, adquirió de la parte recurrente un vehículo de motor marca Lexus Modelo 15300 cuyo precio fue $43,995.00.

Según alegado, el 14 de abril de 2023, se personó al concesionario Benítez Auto en Humacao con la intención de dar el vehículo de motor en "trade-in" y que allí, tras realizar la evaluación rutinaria para determinar el valor del vehículo, se le informó que no podía procederse con el negocio, pues el auto tenía piezas que no contenían "label" con numeración de pieza.

Según la *Querella*, al advenir en conocimiento de este hecho, la recurrida acudió ante la parte recurrente y reclamó que se resolviera el asunto de las piezas, o en la alternativa, que le devolvieran el dinero y ella entregaría la unidad. Ante esto, la parte recurrente negó responsabilidad por la falta de "labels". Así pues, la recurrida realizó una investigación del historial del auto y descubrió que la unidad había sufrido un accidente que había provocado el cambio de piezas. Por esta razón, alegó en la *Querella* que, al momento de la venta, el concesionario debió conocer sobre las piezas de remplazo sin "label". La recurrida reclamó no poder utilizar la unidad, pues conllevaría manejarla con piezas sin identificar, lo que constituye un delito que sobrelleva desde la confiscación del vehículo, hasta pena de cárcel. Según la recurrida, esto constituyó una limitación de transportación y le obligó a pagar por un vehículo de motor que no podía.

Tras los trámites de rigor, el DACo celebró la vista administrativa. Luego de esto, emitió la *Resolución* recurrida en la que, conforme al testimonio de la recurrida y la evidencia documental admitida, formuló 22 determinaciones de hechos. Basándose en las determinaciones de hechos formuladas, el DACo encontró probado que la parte recurrente no cumplió con informar verbalmente y por escrito sobre las condiciones del vehículo comprado; específicamente sobre que este había sido chocado. Tampoco estimó evidenciado el que le hubiera mostrado los "labels" a la recurrida para identificar si faltaba alguno. El DACo, ultimó que la parte recurrente calló sobre una circunstancia importante objeto del contrato, por lo que el consentimiento brindado por la recurrida al momento de la compra estuvo

viciado. Conforme el DACo, lo anterior constituyó dolo grave por parte de la recurrente dándose a lugar la resolución del contrato entre las partes.

Inconforme, la parte recurrente acudió ante nos mediante el recurso de epígrafe y señaló la comisión de los siguientes errores:

> Erró el DACo al concluir que la Parte Recurrente no divulgó a la Recurrida el hecho de que el vehículo objeto de la presente controversia fue chocado, incurriendo así en dolo grave por lo que procedía la resolución del contrato de compraventa entre las Partes.

> Erró el DACo al determinar que procede la devolución de la cantidad de doce mil dólares ($12,000.00) a la parte Recurrida por concepto de pronto pago, cuando de la evidencia surge que ésta pago la cantidad de cinco mil seiscientos dólares ($5,600.00) como pronto.

Atendido el recurso, el 21 de enero de 2025, emitimos *Resolución* mediante la cual le ordenamos a la recurrida a comparecer dentro del plazo establecido en ley para hacerlo. En cumplimiento con lo ordenado, el 18 de febrero del año en curso, esta sometió *Contestación en Oposición de Apelación* donde expuso los hechos por los que, a su entender, la determinación administrativa recurrida debía ser confirmada. Así pues, con el beneficio de la comparecencia de las partes, damos por sometido el asunto, exponemos el derecho aplicable y resolvemos.

**-II-**

Es norma hartamente conocida y reiterada en nuestro ordenamiento jurídico que los foros apelativos deben conceder amplia deferencia a las decisiones administrativas debido a la experiencia y pericia que estos organismos, presumiblemente tienen respecto a las facultades que se les han delegado. Otero Rivera v. Bella Retail Group, Inc., 2024 TSPR 70, 213 DPR ____, al citar a Graciani Rodríguez v. Garage Isla Verde, 202 DPR 117, 126 (2019) y Rolón Martínez v. Supte. Policía, 201 DPR 26, 35 (2018).[1]

---

[1] Reconocemos que recientemente el Tribunal Supremo Federal emitió una decisión en la que cuestionó gran parte de la jurisprudencia que dirige el proceso de revisión judicial que efectúan los tribunales sobre las decisiones administrativas. Particularmente, en cuanto a la deferencia que estas merecen al interpretar un estatuto ambiguo. Véase Loper Bright Enterprises et al., v. Raimondo, 603 US ____ (2024), 144 S. Ct. 2444. No obstante, es nuestro parecer que las circunstancias particulares del caso ante nuestra consideración no requieren que profundicemos sobre los fundamentos consignados en la mencionada decisión.

La competencia de este Tribunal de Apelaciones para revisar las actuaciones administrativas está contemplada en la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), Ley 38-2017, 3 LPRA Sec. 9601, *et seq*. A tales efectos, la Sección 4.1 de la LPAU dispone sobre la revisión judicial que las disposiciones de dicha ley serán aplicables a aquellas órdenes, resoluciones y providencias adjudicativas finales dictadas por agencias, las que serán revisadas por el Tribunal de Apelaciones mediante Recurso de Revisión.[2] Asimismo, la Sección 4.2 de la LPAU establece que la parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión dentro de treinta (30) días contados a partir de la fecha de archivo en autos de la notificación de la orden o resolución final.[3]

La revisión judicial permite a los tribunales garantizar que las agencias administrativas actúen dentro de los márgenes de las facultades que le fueron delegadas por ley. Capote Rivera v. Voili Voila Corporation, 2024 TSPR 29, 213 DPR ____, al citar a Comisión Ciudadanos v. G.P. Real Prop., 173 DPR 998, 1015 (2008). Al ejercer la revisión judicial, los tribunales no pueden descartar de forma absoluta la determinación de una agencia, sino que primero tienen que examinar la totalidad del expediente y determinar si la interpretación de la agencia representó un ejercicio razonable de su discreción administrativa, así fundamentado en la pericia particular de esta, en consideraciones de política pública o en la apreciación de la prueba. *Íd.,* al citar a Otero v. Toyota, 163 DPR 716, 729 (2005). Ello así, puesto a que las determinaciones de los organismos administrativos están revestidas de una presunción de regularidad y corrección por su vasta

---

[2] 3 LPRA Sec. 9671
[3] 3 LPRA Sec. 9672.

experiencia y conocimiento especializado y, conforme ya citamos, merecen deferencia por parte de los foros judiciales. Otero Rivera v. Bella Retail, Group, et al., *supra*.

Ahora, la deferencia antes mencionada no es absoluta. Capote Rivera v. Voili Voila Corporation, *supra.* Por ello, la presunción de regularidad y corrección se respetará a no ser que la parte que las impugne presente prueba suficiente para rebatir tal presunción. Otero Rivera v. Bella Retail, Group, et al., *supra,* al citar a ECP Incorporated v. OCS, 205 DPR 268, 281 (2020) y otros. Así pues, los tribunales no pueden, bajo el pretexto de deferencia a las determinaciones administrativas, imprimirle un sello de corrección a aquellas interpretaciones administrativas que sean irrazonables, ilegales o contrarias a derecho. Capote Rivera v. Voili Voila Corporation, *supra*, al mencionar a Graciani Rodríguez v. Garage Isla Verde, *supra*. Por ello, la deferencia a las decisiones administrativas debe ceder cuando: (1) la decisión no está basada en evidencia sustancial; (2) el organismo administrativo ha errado en la aplicación o interpretación de las leyes o reglamentos;(3) ha mediado una actuación arbitraria, irrazonable o ilegal, o (4) la actuación administrativa lesiona derechos constitucionales fundamentales. Super Asphalt v. AFI y otro, 206 DPR 803, 819 (2021).

*B.*

El contrato es el negocio jurídico bilateral por el cual dos o más partes expresan su consentimiento en la forma prevista por la ley, para crear, regular, modificar o extinguir obligaciones.[4] En este, las partes pueden acordar cualquier cláusula que no sea contraria a la ley, la moral o al orden público.[5] Los acuerdos establecidos en el contrato tendrán fuerza de ley entre las partes.[6] Estos pactos, se perfeccionan por el mero consentimiento y desde ese momento cada una de las partes está obligada a cumplir con lo

---

[4] Artículo 1230 del Código Civil de Puerto Rico de 2020, 31 LPRA Sec. 9751.
[5] 31 LPRA Sec. 9753.
[6] 31 LPRA Sec. 9751.

expresamente pautado y sus consecuencias. 31 LPRA Sec. 9771; Aponte Valentín v. Pfizer Pharmaceuticals, LLC., 208 DPR 263, 286 (2021).

Para que un contrato sea válido, deben concurrir tres elementos esenciales, a saber: (1) consentimiento de los contratantes; (2) un objeto cierto que sea material del contrato; y la causa de la obligación que se establezca. *Íd.*, a la pág. 284. El consentimiento prestado puede ser nulo cuando ha sido prestado por error, violencia, intimidación o dolo. Bosques vs. Echevarría, 162 DPR 830 (2004). Ahora, es importante conocer que no todo tipo de dolo produce la nulidad del contrato. Así pues, el dolo incidental no invalida el negocio jurídico, pero su autor debe indemnizar el daño causado.[7] Para que el dolo cause la nulidad del contrato, deberá ser grave[8] y no puede haber sido empleado por las dos partes contratantes. Bosques vs. Echevarría, *supra*.

**-III-**

Mediante la discusión de su primer señalamiento de error, la parte recurrente nos invita a determinar que la decisión recurrida constituyó un abuso de discreción. Asimismo, nos instiga a concluir que esta también es arbitraria e irrazonable. Para ello, en síntesis, asevera que la determinación alcanzada por el DACo es contraria a la evidencia documental admitida en evidencia. Específicamente, señala que en la *Orden de Compra* se puede apreciar que la recurrida puso sus iniciales al lado de varias divulgaciones en las que se aceptaba que se le informó que el vehículo que estaba adquiriendo había sido chocado y reparado. Por tal razón, sostiene que fue irrazonable concluir en contrario. Ello así, pues, si bien es cierto que en tal documento no se marcó el recuadro con un *check mark*, el DACo no podía concluir que la divulgación no fue efectiva. Según la parte recurrente, el

---

[7] 31 LPRA, Sec. 6213.
[8] Dolo grave, es "la acción u omisión intencional por la cual una parte o un tercero inducen a otra parte a otorgar un negocio jurídico que de otra manera no hubiera realizado. 31 LPRA Sec. 6211.

propósito de pedirle a la recurrida que iniciara esa parte fue precisamente el informar sobre el choque, por lo que la ausencia de dicha marca de verificación dista del silencio interpretado por el DACo sobre la advertencia.

De igual manera, y con el fin de impugnar la determinación recurrida, la parte recurrente argumenta que las propias determinaciones de hechos formuladas por el DACo establecen que la recurrente reconoció haber colocado sus iniciales en las divulgaciones en controversia, por lo que la conclusión de ineficacia por parte de la agencia es arbitraria y caprichosa al no adjudicarle ningún valor a este hecho. Más aún, cuando el testimonio de la recurrida en el cual el DACo descansó para resolver el caso, no era confiable, habiéndose impugnado el mismo durante el turno del contrainterrogatorio.

De otra parte, en su segundo señalamiento de error la parte recurrente cuestiona la cantidad que el DACo le ordenó pagar a la recurrida. En cuanto a esto, expone que según el documento intitulado Recibo #No. 2404, la cantidad entregada por la recurrida en pronto pago fue $5,600 y no $12,000.00, por lo que la devolución de esta última suma, según ordenada, es contraria al expediente.

Un cuidadoso estudio de la determinación recurrida nos permite apreciar que la rescisión determinada en el caso descansó en la credibilidad que el testimonio de la recurrida le mereció al Juez Administrativo. Así surge de la parte dispositiva de *Resolución* cuando lee de la siguiente forma:

> La parte querellante indicó que al momento de compra del vehículo esta tuvo la oportunidad de probar el mismo y luego de probarlo firmó una serie de documentos, entre ellos, la Orden de Venta en la que con sus iniciales afirmaba que se le había informado que la unidad había sido reparada por colisión. De igual modo, colocó sus iniciales en un documento sobre garantía y condiciones del vehículo el cual indicaba que la parte querellante había leído y certificado haber sido responsablemente orientada y que se le habían mostrado los "labels" o etiquetas de las partes en el vehículo. No obstante, **según surge del testimonio de la parte querellante vertido en la vista administrativa, a quien este Departamento le dio entera credibilidad, la parte querellante no fue orientada verbalmente** sobre las condiciones del vehículo

objeto [de la] presente querella. En ningún momento la parte querellada o sus representantes le indicaron que el vehículo había sido chocado, tampoco le mostraron los "*labels*" para poder identificar si faltaba uno, según planteado en la presente querella. […]

Según surge del testimonio de la querellante, luego de pasados veintinueve (29) meses de uso del vehículo, ella intentó dar el mismo en "trade in" en otro concesionario y es cuando adviene en conocimiento de que el vehículo que había comprado le faltaba un "label" en el lado derecho de la unidad. Una vez advino en conocimiento de esto procedió inmediatamente a informar a la parte querellada quienes no le ofrecieron ayuda alguna. Es ahí donde la parte querellante decide investigar sobre el historial del vehículo en una plataforma digital donde confirma que el vehículo en controversia había sido chocado en su lado derecho, para la fecha del 19 de noviembre de 2019, en el estado de Florida, Estados Unidos. El callar sobre una circunstancia importante respecto al objeto del contrato constituye dolo. Para que el dolo produzca la nulidad del contrato, debe ser grave y no haber sido empleado por ambas partes contratantes, además ese dolo grave, es el que afecta el consentimiento que inspira y persuade al contratante, es el que induce al otro a celebrar un contrato que sin ellas no hubiese hecho.

Este Departamento ha determinado que en cuanto a la venta de vehículos de motor usados se refiere, existen unas condiciones relacionadas al uso del vehículo, antes de la compraventa, que son de tal importancia que tienen que ser expresamente informadas al consumidor. Entre ellas, destaca que se notifique <u>verbalmente</u> y por escrito que el vehículo ha sido previamente impactado y reparado. Cabe destacar que, no es el consumidor el que se tiene que percatar del impacto y reparación, es el vendedor el que está obligado a informarlo, verbalmente y por escrito. Por ello el vendedor tiene la obligación de informar si el vehículo fue previamente impactado. Al analizar los documentos suscritos por la parte querellante y admitidos en evidencia, es de particular importancia que estos documentos, aunque aparecen iniciados por la querellante, no podemos concluir que la parte querellante con sus iniciales admitió haber quedado informada de que el vehículo Lexus IS300 adquirido en el concesionario de la parte querellada fue impactado y reparado. De hecho, uno de los documentos donde precisamente se hace constar que la querellante había sido informada que la unidad había sido reparada por colisión, aunque tiene sus iniciales su recuadro se encuentra vacío, sin marca de cotejo alguna. Esto representa una violación al Reglamento de Garantías de Vehículos de Motor del DACO y por ende, no constituye una renuncia por parte de la querellante a sus derechos, de manera informada y voluntaria. (Énfasis suplido)

De la porción antes transcrita es fácil apreciar que, **basándose en el testimonio que ofreció la recurrida durante la vista administrativa**, el DACo encontró probado que a la recurrida no se le notificó **verbalmente** sobre el impacto que en su día recibió el vehículo de motor que iba a comprar; ni de que por la coalición sufrida este fue reparado; ni sobre que como consecuencia de la reparación, el vehículo no contaba con **todos** sus

*labels* de identificación de piezas. Al confrontar las expresiones reproducidas frente a los argumentos levantados por la parte recurrente contra la determinación impugnada, concluimos que la decisión recurrida merece nuestra deferencia, debiéndose confirmar.

Como arriba establecimos, es claro que la determinación recurrida descansó exclusivamente en la credibilidad que el testimonio le mereció al juzgador de hechos y el valor probatorio que este le aplicó conforme a la evidencia documental sometida. Siendo ello así, para derrotar la deferencia que esta decisión merece, la parte recurrente estaba obligada a reproducir ante nos la prueba oral desfilada durante la audiencia administrativa celebrada.[9] Así no hizo. En su recurso, se concentró en impugnar la credibilidad del testimonio de la recurrida en la cual descansó el DACo al señalar que en el contrainterrogatorio esta admitió que, contrario a lo que aseveró en la querella, sí utilizaba el vehículo. Igualmente, se enfocó en establecer que habiéndose establecido como un hecho determinado que la recurrida certificó con sus iniciales que se le mostraron los *labels* o etiquetas de las partes del vehículo, concluir que no se le advirtió de tal hecho era irrazonable y caprichoso. La ausencia de una reproducción de la prueba oral causa que la discusión que la parte recurrente ofrece para atacar la resolución dictada en el caso sea insuficiente en derecho para derrotar la deferencia que nos debe merecer. El valor probatorio que el juzgador de hechos le haya otorgado a la declaración de la recurrida no puede obviarse con meros argumentos o alegaciones. Siendo ello así, y por no habérsenos colocado en posición de intervenir con la apreciación de la prueba, la apreciación de la prueba efectuada por el DACo debe sostenerse.[10]

---

[9] Al final de cuentas, cuando se señalan errores dirigidos a cuestionar la apreciación o suficiencia de la prueba, la naturaleza del derecho apelativo requiere que este ubique al foro revisor en tiempo y espacio de lo ocurrido en el foro primario utilizando alguno de los mecanismos de reproducción de prueba oral, como: (1) transcripción de la prueba, (2) exposición estipulada o (3) exposición narrativa. Pueblo v. Pérez Delgado, 2023 TSPR 35, 213 ____ al citar las Reglas 19, 29 y 76 de nuestro Reglamento, 4 LPRA Ap. XXII-B.

[10] Peor aun, sus planteamientos, obvian aquella porción de la determinación en la que el DACo reconoce la existencia de ciertas condiciones en cuanto a la venta de vehículos de

**-IV-**

Por los fundamentos arriba expuestos, confirmamos la *Resolución* recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

motor usados que deben ser informadas verbal y por escrito al consumidor. Entre estas, allí resaltó que entre las mismas se encontraba el informar **verbalmente** y por escrito, que el vehículo ha sido previamente impactado y reparado. De igual forma, la discusión ofrecida por la parte recurrente ignora que la decisión destaca que, si bien la recurrida aceptó haber iniciado los documentos en cuestión, de su testimonio surgía que esta no fue orientada **verbalmente** sobre las condiciones del vehículo.