Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| ANGELINE S. PÉREZ BETANCOURT<br><br>Recurrida<br><br>V.<br><br>BLUMAR GROUP, LLC; MOTORAMBAR, INC.; VPH MOTOR, CORP. H/N/C TRIANGLE DEALER; **POPULAR AUTO, LLC**<br><br>Recurrente | KLRA202400474 | Revisión procedente del Departamento de Asuntos del Consumidor<br><br>Sobre: Compraventa de vehículos de motor<br><br>Núm.: MAY-2024-0004894 |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero y el Juez Campos Pérez.

Marrero Guerrero, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 31 de octubre de 2024.

Comparece ante nos Popular Auto, LLC (Popular o recurrente) y solicita que revoquemos una *Resolución* emitida el 24 de julio de 2024 por el Departamento de Asuntos del Consumidor (DACo).[1] Mediante esta, el DACo decretó la resolución de un contrato de compraventa de un vehículo de motor defectuoso que la señora Angeline S. Pérez Betancourt (señora Pérez Betancourt o recurrida) adquirió de Blumar Group, LLC (Blumar), así como el *Contrato de venta al por menor a plazos* otorgado por Popular. El foro administrativo adjudicó responsabilidad solidaria entre Blumar y Popular por los daños que sufrió la señora Pérez Betancourt y ordenó que ambas entidades devolvieran a la recurrida el monto total del pronto y de los pagos efectuados por el financiamiento del automóvil.

Por los fundamentos que expondremos a continuación, se adelanta la modificación de la determinación recurrida a los efectos

---

[1] Apéndice de *Revisión de Decisión del DACO,* Anejo 1, págs. 1-12. Archivada el 29 de julio de 2024.

de revocar la responsabilidad solidaria entre Blumar y Popular e imputarles responsabilidad mancomunada. Así modificada, se confirma en cuanto a los demás pronunciamientos.

Veamos el tracto fáctico y procesal en el que se desarrolló la controversia planteada ante nos.

**I.**

Surge del expediente ante nuestra consideración que el 4 de noviembre de 2023, Blumar vendió un vehículo de motor usado a la señora Pérez Betancourt y le cedió a Popular el contrato de venta condicional. La recurrida efectuó un pronto de $1,000.00 y financió el balance del precio de venta de $15,995.00, más un seguro de propiedad sobre la unidad adquirida por la suma de $2,821.00 y un seguro GAP por la suma de $599.00.

Tres (3) semanas luego de la compra, el vehículo de motor comenzó a presentar defectos, por lo que la recurrida lo llevó al concesionario Triangle Dealers en Mayagüez para el diagnóstico y la reparación en garantía. Al examinar el vehículo de motor, empleados del concesionario Triangle Dealers le indicaron que el vehículo carecía de la garantía del fabricante, toda vez que tenía sulfatación en varios componentes eléctricos y señales de lodo en partes internas, lo que le llevaba a la conclusión del que el auto se había inundado.

El 12 de diciembre de 2023, la señora Pérez Betancourt presentó una *Querella* ante el DACo para solicitar la resolución del contrato de compraventa por engaño, ya que los empleados de Blumar por dos (2) ocasiones le informaron que el automóvil aún contaba con la garantía del fabricante por el poco millaje recorrido.

Tras varios trámites procesales, el 29 de julio de 2024, el DACo emitió una *Resolución*, en la que formuló las siguientes determinaciones de hechos:[2]

---

[2] *Íd.*

1. La querellante deseaba adquirir un vehículo de motor para su madre, para llevarla a las citas médicas.

2. La madre de la querellante, la Sra. Alice Betancourt, conoció del querellado Blumar Group, LLC., en adelante Blumar, a través de la red social Facebook, donde exponía anuncio para la venta de autos. La madre de la querellante se interesó en un auto, y contactó al querellado Blumar, por llamada telefónica, donde fue atendida por el Sr. Jorge Ortiz, vendedor del querellado.

3. La Sra. Alice Betancourt, se interesó por un vehículo de motor usado marca Nissan modelo Versa del año 2021. Durante las conversaciones de la Sra. Betancourt, el vendedor le aseguró que el auto contaba con garantía del fabricante Nissan por el millaje que poseía el vehículo. El vendedor, el Sr. Ortiz, y la Sra. Betancourt dialogaron sobre el precio del auto y la garantía del mismo.

4. La querellante Angeline Betancourt, sería la compradora del auto. La querellante acordó con el vendedor, que el auto se lo entregaría en el restaurante Burger King de la Carretera Número 100 en el pueblo de Cabo Rojo.

5. El día 4 de noviembre de 2023, el vendedor, Sr. Ortiz[,] le entregó el vehículo de motor usado marca Nissan modelo Versa del año 2021 con un millaje de 12,952. Las partes otorgaron un contrato de compraventa del vehículo de motor previamente descrito, por el precio de $16,995.00. La querellante le entregó al vendedor del querellado la cantidad de $1,000.00 en efectivo, quedando un balance de $15,995.00, que fue financiado a través de Popular Auto LLC, además se financió un seguro de propiedad del vehículo y un seguro GAP.

6. Al momento de la entrega del vehículo, el vendedor nuevamente le indicó a la querellante que el auto tenía garantía del fabricante.

7. El auto presentaba fango en las puertas a la altura de la bocina de la puerta por dentro.

8. En el acto de la negociación, de la venta y de la entrega del auto, en ninguna de estas ocasiones el vendedor le advirtió a la querellante o a su madre, la Sra. Betancourt, que el auto había sido inundado o sufrido una inundación.

9. Tres semanas después de la compraventa del auto, el aire acondicionado dejó de funcionar.

10. El día 4 de diciembre de 2023, la querellante llevó el auto al concesionario Nissan de Triangle Dealers para que inspeccionaran y repararan el auto, ya que por el millaje del auto y su año todavía tenía garantía del fabricante. Ese mismo día, el Sr- Luis Ramos, de Triangle Dealers, le informó a la querellante que el auto había sido inundado y que no cubría la garantía del fabricante.

11. El dealer Triangle emitió la hoja de servicio número 297943, la cual establece que se verificó unidad y sistema de A/C no funciona[,] blower del aire no prende[,] se verificó unidad y se encontró que la unidad fue inundada y presenta muchos conectores y fusibles lleno de sulfatación por humedad en módulos como el IPDM y en la caja de fusibles dentro de la unidad causando cortes en

varios de los sistemas entre ellos el de A/C. El cargado[r] de USB no funciona debido a la misma causa.

12. Al conocer la querellante que el auto había sido inundado, se sintió engañada, porque el querellado no le indicó dicha situación antes de la venta del auto, y le aseguró que el auto tenía garantía de fábrica.

13. Inmediatamente la madre de la parte querellante llamó a la gerente del dealer Blumar, a la Sra. Cruz, para reclamar que el auto había sido inundado antes de la venta y que no tenía garantía. La Sra. Cruz, indicó que pagara dos [o] tres meses del financiamiento al Banco y que podía entregar el auto en "trade-in" y coger otro auto. La Sra. Betancourt no aceptó- La Sra. Cruz no ofreció reparar el vehículo.

14. El 7 de diciembre de 2023, la querellante notificó a Popular Auto LLC., por correo certificado, lo sucedido con el auto.

15. El día 12 de diciembre de 2023, la parte querellante presentó la querella de epígrafe.

16. El día 6 de marzo de 2024, se llevó a cabo una inspección del auto por un Técnico de DACo, el Sr. Anuedi Ríos. En su informe el Técnico señaló entre otras cosas lo siguiente: Aire acondicionado no funciona: esto es debido a que el fusible del abanico interior se encuentra fundido. Se instal[ó] un fusible y el abanico comenzó a funcionar, pero el fusible se estaba calentando debido a que la caja de fusi[b]le est[á] sulfatada. Se removió el fusible por motivos de seguridad.
Agua por la gaveta: esto es debido a que el abanico del aire no funciona, el sistema de aire acondicionado crea humedad y moja el área de la gaveta.
U[S]B y Lighter y luz larga no funciona: esto es debido a la sulfatación que presenta la caja de fusibles.
Transmisión de cantazo en drive: al momento de la inspección la transmisión no reflej[ó] ningún problema.

Opinión pericial
A mi juicio[,] la unidad debió haberse inundado, ya que presenta óxido en varias áreas, y por lo que este funcionario pudo observar, las partes afectadas se ven como si la inundación fuera hace mucho tiempo.

Estimado
Cablería del interior del dash con caja de fusible + labor $2,000
M[ó]dulo IPDM + labor $700.00
Tratamiento de oxidación $100.00
Total: $2,800.00

17. El auto se encuentra en la residencia de la parte querellante.

18. La querellante se encuentra al día en los pagos mensual[es] del financiamiento del auto.

El DACo determinó que entre Blumar y la señora Pérez Betancourt se perfeccionó un contrato de compraventa de un vehículo de motor por la cantidad de $16,995.00, de los que la

recurrida otorgó $1,000.00 por concepto de pronto y financió con Popular el balance del precio de venta y dos (2) seguros. El foro administrativo encontró que Blumar engañó a la recurrida al no informarle que el automóvil se inundó y al afirmarle falsamente que contaba con la garantía del fabricante, aun cuando la mismo fue invalidada a causa de la inundación sufrida por el vehículo. Al considerar que Blumar actuó con dolo grave, el DACo concluyó que procedía la nulidad del contrato.

Así las cosas, el DACo resolvió que Blumar y Popular eran responsables solidariamente ante la estrecha conexión funcional entre los contratos de compraventa y financiamiento. Dispuso que los negocios estaban unidos de tal modo que la nulidad del contrato original hacía inexistente el negocio de cesión. Así las cosas, el DACo decretó la resolución del contrato bajo el fundamento de dolo contractual, por lo que ordenó que, dentro de un término de veinte (20) días, Blumar le reembolsara a la recurrida la cantidad de $1,000.00 y Popular le reembolsara la cantidad total de las mensualidades pagadas por el financiamiento. A su vez, el DACo dispuso que el recurrente debía cancelar el *Contrato de venta al por menor a plazos* y relevar a la señora Pérez Betancourt de la deuda pendiente bajo dicho contrato. Se le ordenó a Popular suspender y cesar cualquier reclamación o gestión de cobro contra la recurrida y notificar a las agencias crediticias sobre la eliminación del préstamo, así como eliminar cualquier morosidad.

Inconforme, el 27 de agosto de 2024, Popular acudió ante nos mediante el presente recurso de revisión judicial, en el que nos planteó que el DACo cometió los siguientes errores:

> ERRÓ EL DACO AL ADJUDICAR RESPONSABILIDAD SOLIDARIA ENTRE EL CONCESIONARIO DE VENTA BLUMAR GROUP LLC, Y POPULAR AUTO LLC.
>
> ERRÓ EL DACO AL OMITIR EN SU RESOLUCIÓN LA OBLIGACIÓN DE LA VENDEDORA BLUMAR DE REEMBOLSARLE A POPULAR AUTO LA SUMA QUE DICHA

VENDEDORA RECIBI[Ó] COMO PARTE DEL PRECIO DE VENTA DE LA UNIDAD FINANCIADA A LA QUERELLANTE.

En síntesis, Popular esgrimió que, erróneamente, el DACo le impuso responsabilidad solidaria con el concesionario de venta del vehículo de motor adquirido por la señora Pérez Betancourt, cuando únicamente fue el cesionario del contrato de venta en virtud del *Contrato de venta al por menor a plazos*, suscrito con la recurrida. Planteó que, a tenor con lo resuelto en el caso *Berríos v. Tito Zambrana Auto, Inc.,* 123 DPR 317 (1989), el vendedor mantiene sus responsabilidades ante el comprador, aun cuando ceda los derechos adquiridos de un contrato de venta a plazos a una entidad financiera. Particularizó que el vendedor cedente retenía sus obligaciones principales de saneamiento y entrega de la cosa vendida, por lo que era el responsable de las obligaciones impuestas por el Código Civil de Puerto Rico, 31 LPRA sec. 5311 *et seq.* y por la Regla 31 del Reglamento de Garantías de Vehículos de Motor del DACo, Reglamento Núm. 7159, Departamento de Estado, 1 de junio de 2006. Popular adujo que carecía de la obligación de sanear los vicios ocultos del vehículo adquirido por la señora Pérez Betancourt.

A su vez, Popular sostuvo que la solidaridad no se presumía, a menos que se desprendiera clara y evidentemente del contrato. Arguyó que, al imponer responsabilidad solidaria, el DACo interpretó erróneamente el Artículo 202 de la *Ley de Ventas a Plazos y Compañías de Financiamiento*, Ley Núm. 68 de 19 de junio de 1964, según enmendada, 10 LPRA sec. 742 (*Ley de ventas a plazos*) y que dicha actuación era contraria a lo decidido por el Tribunal Supremo en *Otero Rivera v. Bella Detail Group, Inc., y otros*, 2024 TSPR 70. El recurrente expuso que, a tenor con el Artículo 209 (f) de la *Ley de ventas a plazos, supra,* sec. 749, el vendedor retenía la responsabilidad de entregar y sanear la cosa vendida frente a la compradora. Esgrimió que al DACo no reconocer la obligación de

Blumar en restituirle la suma que la entidad financiera le pagó por el balance del precio de venta del vehículo de motor financiado y obligar a Popular devolverle a la señora Pérez Betancourt todos los pagos realizados por el préstamo de financiamiento constituyó enriquecimiento injusto. Por ello, Popular solicitó que modifiquemos la *Resolución* recurrida en cuanto a la determinación de solidaridad entre Popular y el vendedor y se le ordene a Blumar a reembolsar al recurrente la suma de $15,995.00 desembolsada en el préstamo anulado.

En atención a los errores planteados por la parte recurrente, procedemos a exponer la normativa jurídica atinente a este recurso.

**II.**

**A. Revisión judicial**

La *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, Ley Núm. 38-2017, según enmendada, 3 LPRA secs. 9671-9677 (LPAUG), dispone un procedimiento uniforme para la revisión judicial de una adjudicación administrativa. *Gobierno PR v. Torres Rodríguez*, 210 DPR 891, 907 (2022); *Cordero Vargas v. Pérez Pérez*, 198 DPR 848, 857 (2017). Por virtud de la revisión judicial, el Tribunal de Apelaciones puede revisar las decisiones, órdenes y resoluciones finales emitidas por un organismo o una agencia administrativa. Artículo 4.006(c) de la *Ley de la Judicatura*, Ley Núm. 201-2003, según enmendada, 4 LPRA sec. 24y. El objetivo de este recurso es asegurar que el organismo administrativo actuó de conformidad con el poder delegado y la política legislativa. *OEG v. Martínez Giraud*, 210 DPR 79, 88 (2022); D. Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, 3ra ed., Bogotá, Forum, 2013, pág. 669.

Ahora bien, los tribunales apelativos debemos otorgarles deferencia a las determinaciones de los organismos administrativos, puesto que poseen la experiencia y el conocimiento especializado

sobre el asunto que se le delegó. *Transporte Sonnell, LLC v. Junta Subastas Aut. Carreteras*, 2024 TSPR 82; *Violí Violá Corp. et al., v. Mun. Guaynabo*, 2024 TSPR 29; *Otero Rivera v. Bella Detail Group, Inc., y otros, supra*; *Hernández Feliciano v. Mun. Quebradillas*, 211 DPR 99, 114 (2023); *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018); *Torres Rivera v. Policía de PR*, 196 DPR 606, 626 (2016). Por ello, las determinaciones del organismo administrativo gozan de una presunción de legalidad y corrección. *Transporte Sonnell, LLC v. Junta Subastas Aut. Carreteras, supra*; *Otero Rivera v. Bella Detail Group, Inc., y otros, supra*; *Torres Rivera v. Policía de PR, supra*. Esta presunción subsiste mientras la parte que impugne la decisión administrativa demuestre que las determinaciones de hechos no están basadas en el expediente o que las conclusiones de derecho son irrazonables. *OEG v. Martínez Giraud, supra*, pág. 89.

La revisión judicial está cimentada en el criterio de razonabilidad de la actuación administrativa. *Hernández Feliciano v. Mun. Quebradillas, supra*; pág. 115; *Torres Rivera v. Policía de PR, supra*. A saber, los foros apelativos estamos limitados a evaluar tres (3) aspectos: (1) si el remedio concedido fue apropiado; (2) si las determinaciones de hechos se sostienen por evidencia sustancial contenida en el expediente administrativo, y (3) si las conclusiones de derecho de la agencia se sostienen. *Hernández Feliciano v. Mun. Quebradillas, supra*; *Torres Rivera v. Policía de PR, supra*, págs. 626-627; *Moreno Lorenzo y otros v. Depto. Fam.*, 207 DPR 833, 839-840 (2021); *Capó Cruz v. Jta. Planificación et al.*, 204 DPR 581, 591 (2020).

Los foros revisores sostendremos las determinaciones de hechos formuladas por la agencia, si están basadas en evidencia sustancial que obra en el expediente administrativo. Sec. 4.5 de LPAUG, *supra*, sec. 9675. La evidencia sustancial es aquella que una mente razonable podría aceptar como adecuada para sostener una conclusión. *OEG v. Martínez Giraud, supra*, pág. 90. Por otro lado, las

conclusiones de derecho de la agencia serán revisables en todos sus aspectos. Sec. 4.5 de LPAUG, *supra*, sec. 9675. Sin embargo, los foros apelativos debemos otorgarle peso a la interpretación de la agencia sobre aquellas leyes que les corresponde aplicar. *Hernández, Álvarez v. Centro Unido*, 168 DPR 592, 615 (2006). Esto, puesto que "las agencias administrativas son instrumentos necesarios para la interpretación de la ley". D. Fernández Quiñones, *op. cit.,* pág. 716. De esta forma, la revisión judicial se circunscribirá a determinar si la interpretación del organismo administrativo fue razonable, a la luz de las pautas establecidas por la Legislatura. *Hernández, Álvarez v. Centro Unido, supra*, pág. 616. Si la interpretación de la agencia fue razonable, aun cuando no sea la única, los tribunales le otorgaremos deferencia. *Íd.* No obstante, la deferencia a la interpretación de la agencia no significa que los foros judiciales renunciaremos a nuestra función revisora, ya que debemos diferir cuando el organismo administrativo (1) erró al aplicar la ley; (2) actuó de forma arbitraria, irrazonable o ilegal, o (3) lesionó derechos constitucionales fundamentales. *Íd.*; *Hernández Feliciano v. Mun. Quebradillas*, *supra*; *Torres Rivera v. Policía de PR*, *supra*, pág. 628; *Fuertes y otros v. ARPe*, 134 DPR 947, 953 (1993).

Por último, las cuestiones mixtas de hechos y de derecho se considerarán como cuestiones de derecho, por lo que serán revisables en toda su extensión. *Super. Asphalt v. AFI y otro*, 206 DPR 803, 820 (2021); *Rivera v. A&C Development Corp.*, 144 DPR 450, 461 (1997).

### B. Ley de ventas a plazos y compañías de financiamiento

La *Ley de ventas a plazos, supra*, regula los contratos de venta al por menor a plazos celebrados entre un comprador y un vendedor, más la relación jurídica de las compañías de financiamiento que intervienen como terceros cesionarios en las transacciones de venta a crédito sobre los bienes muebles y servicios. *Otero Rivera v. Bella*

*Detail Group, Inc., y otros, supra*; *R&J v. DACo*, 164 DPR 647, 654 (2005); *Berríos v. Tito Zambrana Auto, Inc., supra*, pág. 331.

"Una venta condicional es un negocio jurídico mediante el cual un comprador adviene dueño de un bien con el riesgo de que su dominio se extinga si no cumple con la condición de pagar lo convenido". *Class v. Vehicle Eqmnt. Leasing Co.*, 143 DPR 186, 211 (1997). El contrato de venta condicional es una modalidad de la compraventa con reserva de dominio, específicamente de la venta a plazos. *Íd.*, pág. 212; *Berríos v. Tito Zambrana Auto, Inc., supra*, pág. 326. De acuerdo con el Artículo 101 de la *Ley de ventas a plazos, supra*, sec. 731, una venta al por menor a plazos se define como "toda venta de mercancía; o de servicios rendidos o suplidos, o un acuerdo para suplir o rendir servicios, por un vendedor a un comprador por un precio de venta diferido pagadero a plazos a tenor con un contrato de venta al por menor a plazos". Por otro lado, un contrato de venta al por menor a plazos es:

> [C]ualquier acuerdo convenido en Puerto Rico para pagar el precio de venta al por menor a plazos de mercancía o servicios en el transcurso de un período determinado de tiempo. Además, incluye los certificados de mercancía y certificados de crédito, así como cualquier acuerdo convenido en Puerto Rico en virtud del cual el comprador prometa pagar a plazos el precio de venta diferido de mercancía o servicios, o cualquier parte del mismo o cualquier otro acuerdo convenido en Puerto Rico en virtud del cual el comprador prometa pagar a plazos el balance descubierto de su deuda con un vendedor al por menor y bajo los cuales los cargos a plazos se debitan al balance descubierto por la deuda. El término incluye exclusivamente acuerdos convenidos para pagar el precio de venta al por menor a plazos de mercancía o servicios donde el comprador sea un individuo y medie cargo por financiamiento. *Íd.*

El Artículo 202(4) de la *Ley de ventas a plazos, supra*, sec. 742, establece que todo contrato de venta al por menor debe contener el siguiente aviso:

> "Aviso al cesionario" "El cesionario que reciba o adquiera el presente contrato al por menor a plazos o un pagaré relacionado con éste, quedará sujeto en igualdad de condiciones a cualquier reclamación o defensa que el comprador pueda interponer en contra del vendedor. El cesionario del contrato tendrá derecho a presentar contra el vendedor todas las reclamaciones y defensas que el

comprador pueda levantar contra el vendedor de los artículos o servicios".

Mediante el contrato de venta al por menor a plazos se crea una relación tripartita entre el comprador, el vendedor y la entidad financiera, en la que la cesión del contrato de venta condicional se prevee desde que se perfecciona la compraventa. *Otero Rivera v. Bella Detail Group, Inc., y otros, supra*; *R&J v. DACo, supra*, pág. 655; *Berríos v. Tito Zambrana Auto, Inc., supra*, pág. 328; *Ortiz Rolón v. Soler Auto Sales et al.*, 202 DPR 689, 706 (2019). El contrato de venta al por menor a plazos puede ser cedido a un tercero, aun cuando no constituya un instrumento negociable. *Berríos v. Tito Zambrana Auto, Inc., supra*, pág. 327. La finalidad de la cesión es transmitir la titularidad del contrato de venta condicional del vendedor cedente a la entidad financiera cesionaria. *Íd.*, pág. 329; *Otero Rivera v. Bella Detail Group, Inc., y otros, supra*; *R&J v. DACo, supra*. Considerando sus características particulares, se trata de una cesión de contratos atípica o *sui géneris*. *Íd.*, pág. 330; *Otero Rivera v. Bella Detail Group, Inc., y otros, supra*; *R&J v. DACo, supra*. Se cede el derecho de crédito del vendedor y sus correspondientes obligaciones hasta que el comprador satisfaga el pago del precio. *Berríos v. Tito Zambrana Auto, Inc., supra*. A saber, una vez se perfecciona la compraventa a plazos, el vendedor le cede a la entidad financiera su posición frente al comprador, a cambio del pago inmediato del precio. *Íd.*, pág. 328; *Otero Rivera v. Bella Detail Group, Inc., y otros, supra*. Posteriormente, el comprador queda deudor de la obligación de los pagos en los plazos convenidos con la entidad financiera cesionaria. *Berríos v. Tito Zambrana Auto, Inc., supra*, pág. 329.

A pesar de la independencia formal, existe una estrecha relación funcional entre el contrato de venta al por menor a plazos y el contrato de financiamiento, de modo que la ineficiencia de uno hace desaparecer la razón de existir del otro. *Íd.*, pág. 336; *Otero*

*Rivera v. Bella Detail Group, Inc., y otros, supra.* Ahora bien, en la cesión de un contrato de venta al por menor, el vendedor cedente no queda liberado de sus responsabilidades originales frente al comprador. *Íd.*, pág. 330; *R&J v. DACo, supra.* A saber, el Artículo 209(f) de la *Ley de venta a plazos, supra,* sec. 749(f), dispone lo siguiente:

> Ningún contrato contendrá disposiciones en virtud de las cuales:
>
> [...]
>
> (f) El comprador releve al vendedor de la responsabilidad que pudiera éste tener para con él bajo el contrato o cualquier otro documento otorgado en conexión con el mismo.

En otras palabras, a pesar de que el vendedor haya cedido el contrato de venta a plazos a la entidad financiera, no queda liberado de toda responsabilidad surgida de su relación con el comprador en su función de vendedor del vehículo de motor. *R&J v. DACo, supra.* Es decir, el cedente retiene sus obligaciones principales de vendedor dispuestas en el Código Civil, como la entrega y el saneamiento de la cosa vendida. *Íd.*; *Berríos v. Tito Zambrana Auto, Inc., supra.* Además, "el cedente es responsable de asegurar el patrimonio del cesionario que nada [h]a tenido que ver con la perfección del contrato base". *Otero Rivera v. Bella Detail Group, Inc., y otros, supra, citando a* J.A. Cuevas Segarra, *La ley de ventas condicionales de Puerto Rico,* Jurisprudencia, 29 Rev. Der. PR 185, 190 (1989).

Por otra parte, entre las Reglas 28 a la 31 del Reglamento de Garantías de Vehículos de Motor del DACo, *supra,* se le impone al vendedor de un vehículo de motor usado una serie de obligaciones frente al comprador. En específico, la Regla 31 del Reglamento de Garantías de Vehículos de Motor del DACo, *supra,* establece que:

> No se venderá ningún vehículo de motor usado sin que:
>
> a. Haya pasado la inspección que requiere la Ley de Vehículos y Tránsito de Puerto Rico.
>
> b. Su velocímetro y odómetro estén trabajando satisfactoriamente y se verifique que no han sido alterados

> y que tengan el "vin numer" en todas las piezas con respecto a aquellos modelos y marcas de vehículos de motor que designe de tiempo en tiempo el gobierno federal.

A su vez, la Regla 8 del Reglamento de Garantías de Vehículos de Motor del DACo, *supra*, le impone responsabilidad solidaria al cesionario del contrato de compraventa en torno a la obligación de entregar los documentos necesarios para la inscripción del vehículo de motor. A saber, dicha regla dispone lo siguiente:

> Todo vendedor al detal de un vehículo de motor someterá al Departamento de Transportación y Obras públicos toda la documentación exigida por ley para su inscripción dentro de los treinta (30) días siguientes a la fecha de venta. Todo cesionario del contrato de compraventa de un vehículo de motor responderá solidariamente con el vendedor de esta obligación. *Íd.*

No obstante lo anterior, nada en la *Ley de ventas a plazos, supra,* la *Ley de garantías de vehículos de motor*, Ley Núm. 7 de 24 de septiembre de 1979, según enmendada, 10 LPRA sec. 2051 *et seq.,* ni en el Reglamento de Garantías de Vehículos de Motor del DACo, *supra,* dispone con respecto a que el cesionario responde de manera solidaria por la devolución de las prestaciones cuando se decreta la resolución del contrato de compraventa. *Otero Rivera v. Bella Detail Group, Inc., y otros, supra.*

### C. Responsabilidad solidaria y mancomunada

Cuando existe una pluralidad de deudores en una obligación, esta se puede clasificar de naturaleza mancomunada o solidaria. *Íd.*; *Pérez et al. v. Lajas Medical et al.*, 207 DPR 965 (2021); *Quílez-Velar et al. v. Ox Bodies, Inc.*, 198 DPR 1979, 1984 (2017); *Fraguada Bonilla v. Hosp. Aux. Mutuo*, 186 DPR 365, 375 (2012). En la obligación mancomunada, cada deudor tiene que cumplir con su parte de la deuda que le corresponda de manera independiente mientras que, en las obligaciones solidarias, cada deudor tiene el deber de cumplir íntegramente con la totalidad de la obligación. *Otero Rivera v. Bella Detail Group, Inc., y otros, supra; Fraguada Bonilla v. Hosp. Aux. Mutuo, supra.* En nuestro ordenamiento jurídico, la solidaridad no se

presume. *Íd.* Pues, como regla general se presume la mancomunidad de la obligación; la solidaridad surge sólo por excepción cuando expresamente la obligación lo determine. *Íd.* La solidaridad puede nacer de la ley o de la voluntad expresa de las partes en el negocio jurídico. *Íd.*

Evaluada la normativa jurídica pertinente a este recurso, procedemos a aplicarla a los hechos de este caso.

**III.**

En el presente caso, Popular cuestionó la determinación del DACo en adjudicarle responsabilidad solidaria conjunto al vendedor Blumar meramente por ser cesionario por virtud del *Contrato de venta al por menor a plazos*. A su vez, adujo que erró el foro administrativo al no imponer a Blumar la responsabilidad de devolverle la suma que recibió como parte del precio de venta del automóvil financiado. Le asiste la razón al recurrente. Una vez se perfeccionó el contrato de venta del vehículo de motor con Blumar, la señora Pérez Betancourt financió el mismo. Por consiguiente, Blumar le cedió su posición a Popular a cambio del pago inmediato del precio de venta del automóvil mediante el financiamiento del balance del precio de venta de $15,995.00. De esta forma, Popular se convirtió en el cesionario del contrato de venta a plazos, de conformidad con la *Ley de ventas a plazos, supra.*

A tenor con la normativa jurídica previamente discutida, en ausencia de una voluntad expresa de obligaciones solidarias entre Blumar y Popular, en este contrato opera la presunción de mancomunidad en cuanto a las obligaciones del vendedor frente al comprador. Es decir, tanto Blumar como Popular deberán responder de manera independiente con sus respectivas obligaciones de devolver las prestaciones que le corresponden. *Otero Rivera v. Bella Detail Group, Inc., y otros, supra.* El hecho de que exista una estrecha conexión funcional entre los contratos de compraventa y

financiamiento no es indicativo de que Popular asumió solidariamente las responsabilidades de Blumar como vendedor del vehículo de motor defectuoso. Pues, reiteramos que nada en la *Ley de ventas a plazos, supra,* la *Ley de garantías de vehículos de motor, supra,* ni en el Reglamento de Garantías de Vehículos de Motor del DACo, *supra,* dispone que el cesionario responde solidariamente por la devolución de las prestaciones cuando se decreta la resolución del contrato de compraventa. Véase *Otero Rivera v. Bella Detail Group, Inc., y otros, supra.*

Establecido que la responsabilidad entre las partes querelladas es mancomunada, y a fin de alcanzar un resultado justo, no basta con que cada uno devuelva lo recibido. Más bien, el concesionario deberá devolver a la compradora todo lo pagado por concepto de la compra del vehículo y saldar el balance pendiente en la institución financiera. De esta forma, el concesionario será responsable de restituir todos los gastos incurridos por la compradora en concepto de la transacción cancelada, incluyendo los intereses a favor del banco. Por su parte, la institución financiera estará obligada a recibir de parte del concesionario el balance pendiente del préstamo y cancelar inmediatamente el préstamo a nombre de la compradora. De este modo, la institución financiera, quien no ha sido responsable por las acciones dolosas del concesionario, podrá retener los intereses devengados durante el término que estuvo vigente el préstamo a expensas del concesionario. Asimismo, la recurrida deberá devolver el vehículo de motor al vendedor. Con esta sencilla solución, el concesionario devuelve lo pagado por la señora Pérez Betancourt y salda el préstamo, sin que pueda beneficiarse por sus propias actuaciones, ni perjudicar a las demás partes inocentes.

**IV.**

Por las razones que anteceden, se modifica la *Resolución* recurrida a los efectos de revocar la responsabilidad solidaria entre

Blumar y Popular e imputarles responsabilidad mancomunada. En consecuencia, las partes deberán proceder conforme fuera dispuesto en la sección anterior de esta Sentencia: el concesionario deberá devolver a la compradora todo lo pagado por concepto de la compra del vehículo y saldar el balance pendiente en la institución financiera. Por su parte, la institución financiera estará obligada a recibir de parte del concesionario el balance pendiente del préstamo y cancelar inmediatamente el préstamo a nombre de la compradora. Por último, la recurrida Pérez Betancourt deberá devolver el vehículo de motor a Blumar.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones